**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: SPECTRUM ALLIANCE, LP,<br>  Debtor<br>_____<br><br>THE NORTHEAST CARPENTERS<br>ANNUITY FUND,<br>  Appellant<br><br>  v.<br><br>SPECTRUM ALLIANCE, LP,<br>  Appellee.<br>_____ | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    CIVIL ACTION<br>   NO. 18-0724 |

**MEMORANDUM**

**Jones, II. J.**                                   **October 31, 2019**

### I. Introduction

Presently before this Court is an appeal by Northeast Carpenters Annuity Fund ("Fund") from an Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania recategorizing the Fund's proof of claim against debtor Spectrum Alliance, LP ("Spectrum") as a proof of interest and, accordingly, subordinating the Fund's interest pursuant to 11 U.S.C. § 510(b). Upon referral from this Court, the Honorable Lynne A. Sitarski, United States Magistrate Judge, prepared a Report and Recommendation, recommending affirmance of the Bankruptcy Court's Order and denial of the Fund's appeal. (ECF No. 12.) The Fund objected to Judge Sitarksi's Report and Recommendation. (ECF No. 13.) Spectrum responded. (ECF No. 15.) For the reasons set forth herein, Judge Sitarksi's Report and Recommendation is adopted by this Court over the Fund's objections and the Order of the Bankruptcy Court is affirmed.

## II. Background[1]

The Northeast Carpenter's Annuity Fund ("Fund") is a benefit fund providing retirement benefits to union members. Spectrum Alliance, LP ("Spectrum") is a limited partnership incorporated under the laws of Pennsylvania. Spectrum Alliance Services, GP, LLC is a general partner of Spectrum. Trefoil Properties, L.P., a Delaware limited partnership, is the sole member of general partner Spectrum Alliance Services, GP, LLC.

In October 2012, the Fund purchased five million dollars' worth of Class A shares in Spectrum, thereby becoming a limited partner. As a partner, the Fund was bound by Spectrum's Partnership Agreement, which states that partners are not entitled to redeem their partnership interests but that they may request redemption of their interest and "the General Partner shall endeavor in good faith to effect such redemption." However, prior to investing, and to induce the Fund to invest, Trefoil—Spectrum's General Partner's sole member—entered into a Guaranty and Suretyship Agreement with the Fund. Said Agreement worked around the Partnership Agreement's redemption terms by making Trefoil "surety for the payment to [the Fund] of the [redemption amount]," and making the redemption amount "due and payable in full" by six months from the date of a written redemption request by the Fund. On October 18, 2012, the Fund and Spectrum also entered into a letter agreement (dubbed "Side Letter") pursuant to which the Fund had "the right to demand and obtain the immediate redemption of the Fund's entire interest in Spectrum" if, at certain evaluation times, the Fund's investments in Spectrum appraised "greater than 5% below the original value." Due to a low September 2013 valuation, the Fund submitted a redemption request on October 1, 2013. Spectrum did not honor

---

[1] Citations omitted for brevity but the facts are well known to the parties at this point. All document quotations are derived from the respective referenced document located in the case Appendix (ECF No. 4-1). For additional background, see the parties' briefs, and the Report and Recommendation (ECF No. 12) of the Honorable Lynne A. Sitarski, United States Magistrate Judge.

the Fund's request for redemption before, in June 2017, Spectrum filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania.[2]

After Spectrum filed for bankruptcy, the Fund filed a proof of claim, seeking redemption of its $5,000,000 investment in Spectrum plus interest. The Bankruptcy Court found the Fund was an equity security holder and, accordingly, recategorized the Fund's proof of claim as a proof of interest and subordinated its interest pursuant to 11 U.S.C. § 510(b). The Fund appealed the Bankruptcy Court's recategorization and subordination to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 158(a).[3] Upon referral from this Court, the Honorable Lynne A. Sitarski, United States Magistrate Judge, prepared a Report and Recommendation, recommending affirmance of the Bankruptcy Court's Order and denial of the Fund's appeal. (ECF No. 12.) The Fund filed objections to Judge Sitarksi's Report and Recommendation. (ECF No. 13.) Spectrum responded to the Fund's objections. (ECF No. 15.)

### III. Standard of Review

When objections are filed to the Report and Recommendation ("R&R) of a Magistrate Judge, the district court must conduct a *de novo* review of those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1). If there are no objections to the R&R, or when reviewing those portions of the R&R to which no objections are directed, the court, as a matter of good practice, should "satisfy itself that there is no clear error on the face of the record in

---

[2] The Fund indicates the Bankruptcy Court did not permit factual evidence of the Fund's efforts to enforce the redemption request between the time of the Fund's request for redemption and the time of the bankruptcy petition. Such evidence may be relevant to an abandonment analysis or other similar issue, but the law applicable to this appeal does not consider such issues.
[3] "The district courts of the United States shall have jurisdiction to hear appeals [] from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings [in] the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

order to accept the recommendation."  Fed. R. Civ. P. 72(b), advisory committee notes; *see also Oldrati v. Apfel,* 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection … this Court will review [the Magistrate's] Report and Recommendation for 'clear error.'") (citations omitted).

"Objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to de novo review."  *Gray v. Delbiaso*, CIVIL ACTION NO. 14-4902, 2017 U.S. Dist. LEXIS 101835, at *11 (E.D. Pa. Jun. 30, 2017).  "Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled."  *Prout v. Giroux*, CIVIL ACTION NO. 14-3816, 2016 U.S. Dist. LEXIS 57085, at *30 (E.D. Pa. Apr. 29, 2016).  "[F]ederal district courts are not required to engage in de novo review of objections to a Magistrate's R&R that lack specificity."  *Guzman v. Rozum*, CIVIL ACTION NO. 13-7083, 2017 U.S. Dist. LEXIS 55661, at *22 (E.D. Pa. Apr. 12, 2017).

**IV.  Discussion**

Generally speaking, the Fund's objections essentially repackage arguments presented in its appeal, which was referred to and considered by Judge Sitarksi.  Therefore, the Fund's objections are not entitled to comprehensive de novo review.  However, because the Fund's objections endeavor to respond particularly to the content of Judge Sitarksi's R&R and for thoroughness' sake, this Court shall conduct de novo review limited to the Fund's specific objections.

### A. Appellant's Objections[4]

The Fund objects to the Magistrate's conclusion that the Fund's proof should be characterized as a proof of interest, not a proof of claim.[5] (Objs. 1.) It argues the Magistrate arrived at the wrong characterization because she disregarded the applicable legal standard for characterization of claims. (Objs. 1.) The Fund also objects to the finding that its interests are subject to subordination pursuant to 11 U.S.C. § 510(b). (Objs. 1.) This Court shall address the Fund's objections ad seriatim.

### B. Security Interest vs. Creditor Interest

In arguing that the R&R erred by characterizing the Fund's proof of interest as a proof of claim, the Fund quotes *In re Ben Franklin Hotel Assocs*. to emphasize the proposition that interest holders may also be creditors. (Objs. 1-2 (quoting Civil Action No. 97-7449, Bankruptcy No. 93-17088 SR, 1998 U.S. Dist. LEXIS 2304 at *7 (E.D. Pa. Mar. 4, 1998)).) The Fund submits that by and through the Side Letter, it negotiated for and obtained the independent contractual right to redeem its equity interest in Spectrum and since the Fund's proof of claim was based on breach of said contractual right—not on its equity interest—the R&R erroneously concluded that the Fund's proof of claim is really a proof of interest. (Objs. 2-3.) The Fund also

---

[4] The Fund enumerates five objections in the introduction of its brief. However, all five speak to one of two closely interrelated issues: 1.) whether the Fund's interest is correctly characterized as a security interest or as a credit interest, and 2.) whether the Fund's interest was correctly subordinated pursuant to § 510(b) of the Bankruptcy Code. Thus, this Court shall limit its review to those two issues.

[5] "An ownership interest is not a debt of the partnership. Partners own the partnership subject to profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. Thus, an ownership interest is not a claim against the partnership." *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999).

argues the R&R overlooked the specific factors of an[6] applicable interest-character test, summarily and erroneously determining satisfaction thereof. (Objs. 2-4.)

The Fund's insistence that a security holder may also be a creditor shows too little. It shows that the Fund, as a security holder, is not categorically foreclosed from being a creditor, but it does not establish what is required to carry the day—that the Fund is necessarily a creditor with respect to the interest at issue. The Fund's argument is therefore rejected.

The Fund's attempt to establish itself as a creditor pursuant to the multi-factor interest-character test in *NTP Marble, Inc. v. Papadopoulos* (*In re NTP Marble, Inc.*), 491 B.R. 208, 212 (Bankr. E.D. Pa. 2013) is also not persuasive. The factors contained therein include:

> (a) names given to the instruments, if any, evidencing the indebtedness; (b) presence or absence of a fixed maturity date and a schedule of payments; (c) no fixed rate of interest and interest payments; (d) whether repayment depended on success of the business; (e) inadequacy of capitalization; (f) identity of interests between creditor and stockholder; (g) security, if any, for the advances; (h) ability to obtain financing from outside lending institutions; (i) extent to which the advances were subordinated to the claim of outside creditors; (j) the extent to which the advances were used to acquire capital assets; (k) presence or absence of a sinking fund; (l) presence or absence of voting rights; and (m) other considerations.

*NTP Marble, Inc. v. Papadopoulos* (*In re NTP Marble, Inc.*), 491 B.R. at 212. As a preliminary matter, the test contains thirteen factors and the Fund only argues that five of them support its position. (Objs. 3-4.) Thus, at first blush, the Fund does not employ the test persuasively. Furthermore, some of the arguments advanced by the Fund with respect to the five factors it does employ do not withstand scrutiny.

---

[6] The Fund quotes one multi-factor test but concedes that the test it quotes is one of several. (Objs. 3 (quoting *NTP Marble, Inc. v. Papadopoulos* (*In re NTP Marble, Inc.*), 491 B.R. 208, 210 (Bankr. E.D. Pa. 2013) ("On the question of re-characterization, the Third Circuit has observed that courts have adopted a variety of multi-factor tests borrowed from non-bankruptcy case law.")).)

Regarding the first factor—names given to instruments evidencing the indebtedness, the Fund argues the Side Letter is the instrument evidencing the indebtedness and its contents provide a separate right of payment. However, by its terms, the first factor considers the *names* of the instruments evidencing the indebtedness, not their contents. The name "Side Letter" conjures thoughts of side deals or workarounds, which comports with the intent of the Side Letter—working around the non-committal redemption terms of the Partnership Agreement. While parties may be free to contract around other contracts, parties are not free to contract around key bankruptcy laws. *In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 263 (Bankr. D. Del. 2016) ("The Bankruptcy Code pre-empts the private right to contract around its essential provisions."); *see In re Nortel Networks, Inc.*, 522 B.R. 491, 507 (Bankr. D. Del. 2014) (implying an agreement to contract around the Bankruptcy Code's priority scheme would be impermissible). Thus, as with all interests in a bankrupt entity, the Fund's contractual right may take on a new character post-petition.

With respect to the second factor—presence or absence of a fixed maturity date and schedule of payments, the Fund argues "[t]he Side Letter set forth a fixed maturity date with respect to the right of payment (30 days following the June 30, 2013 valuation)." (Objs. 4.) However, the Fund appears to oversimplify the matter. The Side Letter provided that, in the event of a "materially low[]" appraisal of the Fund's investments as of June 30, 2013, the Fund would "have the right to demand and obtain the immediate redemption of [its] entire interest in [Spectrum] in accordance with the Guaranty and Suretyship Agreement but unrestricted by any limitations … set forth therein." Valuation of the Fund's investments as of June 30, 2013 was not expected to be completed until August 2013,[7] and "materially low[]" valuation was a

---

[7] *See* R&R 3 n.2. Because it had to evaluate performance data for dates up to and including June 30, 2013, the valuation could not be provided promptly on June 30, 2013.

predicate for demand, which was not automatic and was a predicate for maturity.  Thus the Side Letter set forth an ambiguous predicate maturity date, not a fixed maturity date.  And while, once the Fund demanded redemption, "immediate" was specific with respect to the timing of payment, it can hardly be considered a "schedule of payments."

With respect to the fourth factor—whether repayment depended on success of the business, the Fund argues its right to repayment did not depend on Spectrum's success because it depended on the contractual obligation generated by the Side Letter.  However, according to the terms of the Side Letter, the Fund's right to make a redemption request was triggered only if its investment in Spectrum fell below 95% of its initial value.  Thus, repayment depended on Spectrum's success, or lack thereof.  In fact, the Fund's objections state that it "demanded and procured the Side Letter specifically because of [its] concerns regarding the valuation of its equity interest," which, in turn, depends on Spectrum's performance.  (Objs. 4.)  With only two of thirteen factors remaining—1.) fixed payment and interest rates and 2.) voting rights—the Fund makes a weak showing with respect to its chosen interest-character test.  As such, the Fund's interest-character test argument does not persuade this Court that the Bankruptcy Court and the Magistrate clearly erred by characterizing the Fund's interest as a security interest and not a creditor interest.  Therefore, the Fund's associated objection is overruled.

C. **Subordination Pursuant to 11 U.S.C. § 510(b)**

The Fund further contends its interest should not be subordinated pursuant to § 510(b) of the Bankruptcy Code.  Section 510(b) provides, in relevant part:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security … shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

The text of the statute indicates that the question of whether the Fund's interest should be subordinated is determined by the nature of the Fund's interest. If the Fund's interest is a creditor interest, § 510(b) does not compel its subordination. If the Fund's interest is a security interest, § 510(b) compels its subordination. Therefore, because the Fund's objections do not show its interest is a creditor interest, its objection to subordination must likewise be overruled. A brief survey of applicable, controlling case law confirms this result.

The Third Circuit recently evaluated the scope of 11 U.S.C. § 510(b) in two cases that are factually analogous to the instant case. In *Baroda Hill Invs., Inc. v. Telegroup, Inc.* (*In re Telegroup, Inc.*), appellant-claimant LeHeron Corporation, Ltd. ("LeHeron") was a shareholder of appellee Telegroup, Inc. ("Telegroup"). 281 F.3d 133, 135 (3d Cir. 2002). Telegroup filed a Chapter 11 bankruptcy petition and LeHeron subsequently filed a proof of claim seeking damages for Telegroup's breach of a stock purchase agreement provision that required Telegroup to ensure the stock was "registered and freely tradeable." *Id*. at 135-36. The bankruptcy court and the district court both found LeHeron's claims should be subordinated pursuant to § 510(b) and LeHeron appealed to the Third Circuit. *Id*. On appeal, LeHeron argued § 510(b) should be construed narrowly to mean only claims predicated on illegality at the time of issuance of stock should be subordinated pursuant to § 510(b), not claims predicated on post-purchase illegality. *Id*. Telegroup argued for a broader construction (ultimately adopted by the Third Circuit) under which "claims for breach of a stock purchase agreement, which would not have arisen but for the purchase of … stock, may arise from that purchase, even though the actionable conduct occurred after the transaction was completed." *Id*. The Third Circuit found the scope of § 510(b)

presented a matter of first impression and carefully considered the text of the statute, the legislative history with underlying policy considerations, and decisions from other jurisdictions. The Third Circuit considered the "arising from" language ambiguous and susceptible to both the narrower interpretation advanced by LeHeron and the broader interpretation advanced by Telegroup.[8] *Id*. at 138. However, utilizing a "but for" causation analysis to answer the question of whether a claim arises from the purchase or sale of a security, the Court of Appeals found the broader reading of § 510(b) "more comfortable." *Id*. Finally, after reviewing the legislative history, policy considerations, and decisions from other jurisdictions, the Third Circuit settled into the broader interpretation and held that "a claim for breach of a provision in a stock purchase agreement requiring the issuer to use its best efforts to register its stock arises from the purchase or sale of the stock, and therefore must be subordinated pursuant to § 510(b)." *Id*. at 137-44.

Although the Third Circuit limited its holding to stock purchase agreement provisions that "requir[e] the issuer to use its best efforts to register its stock," this Court finds the provision at issue in *In re Telegroup, Inc*. analogous to the stock purchase agreement[9] provision at issue here inasmuch as both were intended to facilitate liquidation of equity investments. *Id*. at 144. *In re Telegroup, Inc*. is further analogous because the Fund's claim and LeHeron's claim were each based on a post-purchase-agreement breach, and LeHeron intended to liquidate its equity

---

[8] The same could be said of the parties' arguments here but the remainder of the Third Circuit's analysis in *In re Telegroup, Inc*. along with the factual similarities between that case and this one compel this Court to conclude *In re Telegroup, Inc*. is controlling of this case.

[9] Strictly speaking, the provision at issue here is part of the Side Letter—an agreement between the Fund and Spectrum, not part of the Partnership Agreement. However, the Side Letter modified the terms of the Guaranty and Suretyship Agreement, which modified the terms of the Partnership Agreement and was generated to induce the Fund to invest in Spectrum. *See supra* Part II. As such, the Side Letter is one part of a multi-document stock purchase agreement between the Fund and Spectrum.

investment in Telegroup just as the Fund here intended to redeem its equity investment in Spectrum.[10]  *Id*. at 142.  Thus, this Court finds *In re Telegroup, Inc*. analogous and therefore finds its holding applicable and controlling here.

The Third Circuit extended its *In re Telegroup, Inc*. holding in *Frankun v. Int'l Wireless Communs. Holdings, Inc.* (*In re Int'l Wireless Communs. Holdings, Inc.*).  68 F. App'x 275, 277-78 (3d Cir. 2003). Therein, claimant-appellants Frankum[11] and Wasaff ("F&W") received stock from appellee International Wireless Communications Holdings, Inc. ("IWCH") as consideration for the sale of their shareholdings in another mobile communications company.  The stock purchase[12] agreement contained provisions requiring IWCH to either provide F&W a near-term opportunity to liquidate its holdings by conducting an initial public offering within a specified period of time or, if it did not timely provide such an opportunity, to essentially limit F&W's risk by issuing F&W additional stock to account for loss in the value of F&W's stock while F&W awaited the opportunity to liquidate.  *Id*. at 276-77.  IWCH filed for Chapter 11 bankruptcy before providing F&W an opportunity to liquidate and before issuing F&W additional shares.  *Id*. at 277.  In bankruptcy proceedings, F&W filed a proof of claim for the initial value of their stock and both the bankruptcy court and the district court found their claim should be subordinated pursuant to § 510(b).  *Id*. at 277.  F&W appealed.  After revisiting the legislative history and policy behind the statute,[13] the Third Circuit found F&W should bear the risk that

---

[10] Put another way, neither LeHeron nor the Fund intended to bear the risk of business insolvency. However, the Third Circuit did not find such an argument persuasive.  *In re Telegroup, Inc*., 281 F.3d at 142.

[11] There is no apparent explanation for or resolution of the discrepancy between the spelling of the name in the caption and the spelling of the name in the body of the opinion.

[12] Stock received as consideration is purchased for purposes of § 510(b).  *In re Int'l Wireless Communs. Holdings, Inc*., 68 F. App'x at 277.

[13] A fundamental policy consideration underlying § 510(b) is that shareholders should bear the risk that their securities may have been fraudulently issued.  *In re Telegroup, Inc*., 281 F.3d at 139-40.  In *In re Int'l Wireless Communs. Holdings, Inc*., the Third Circuit logically extended this risk to include

IWCH might not honor the stock purchase agreement. *Id*. at 278. The Third Circuit also applied the "but for" causation analysis from *In re Telegroup, Inc*. and found that F&W would not have had a claim but for their purchase of IWCH stock. The Court of Appeals considered *In re Telegroup, Inc*. controlling of *In re Int'l Wireless Communs. Holdings, Inc*. and concluded that § 510(b) required subordination of F&W's claim. *Id*. at 278.

Likewise, here, the Fund bore the risk that Spectrum would not deliver the Fund's shares according to the terms of their agreement and the but-for causal connection between the Fund's claim and its purchase of Spectrum shares weighs in favor of subordination.[14] Thus, *In re Int'l Wireless Communs. Holdings, Inc*. is also instructive and controlling of the instant case.

The foregoing compels subordination of the Fund's claim pursuant to 11 U.S.C. § 510(b). The Fund's associated objection is therefore overruled.

## V. Conclusion

Having reviewed the Report and Recommendation for clear error and finding none, and having conducted de novo review of the specific issues raised by Appellant's objections, for the reasons set forth above, Appellant's Objections are overruled, and Judge Sitarski's Report and Recommendation is adopted.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.

---

the risk that a shareholders "shares will not be delivered according to the terms of their contract with [the issuer]." *In re Int'l Wireless Communs. Holdings, Inc*., 68 F. App'x at 278.

[14] The but-for causation inquiry is not necessarily intended to be dispositive or to encompass every claim brought by a shareholder. *See In re Telegroup, Inc*., 281 F.3d at 144 n.2. However, but-for causation between claim and stock purchase weighs in favor of subordination.